IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER B.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No 6:19−cv−01624−CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Christopher B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability and disability insurance benefits (DIB) and supplemental security income (SSI). Full consent to Magistrate jurisdiction was entered on May 28, 2019. (#4). For the reasons below, the Commissioner's decision is AFFIRMED.

## BACKGROUND[2]

    Born in 1979, Plaintiff was thirty-four years old on the alleged onset date. Tr. 25. He has a high school education. Tr. 39, 25. He has past relevant work experience as a warehouse worker and performance trainer. Tr. 25. He alleges he is unable to work due to a history of

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties, and any relations, in this case.
[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 10.

Page 1 of 14 – OPINION and ORDER

hydrocephalus, chronic pain syndrome, bilateral median neuropathy, status post right release; sleep disorder; attention deficit hyperactivity disorder ("ADHD"); unspecified anxiety disorder; and unspecified depressive disorder.

In February 2016, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning January 29, 2014. Tr. 210-26.  The agency denied the claims both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 134-53. He appeared for a hearing before ALJ Elizabeth Watson in June 2018. Tr. 33-63. On September 17, 2018, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 14-32. Plaintiff requested review of the hearing decision, which the Appeals Council denied in August 2019. Tr. 207-09, 5-10. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

      §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2021.

2. Plaintiff has not engaged in substantial gainful activity since January 29, 2016 the alleged onset date.

3. Plaintiff has the following severe impairments: history of hydrocephalus; chronic pain syndrome; bilateral median neuropathy, status post right release; sleep disorder; attention deficit hyperactivity disorder ("ADHD"); unspecified anxiety disorder; and unspecified depressive disorder.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. Plaintiff has the residual functional capacity to perform light exertion work with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking for a total of about six hours of an eight-hour workday and sitting for a total of about six hours of an eight-hour workday, with normal breaks. [Plaintiff] must avoid walking on uneven surfaces. He is limited to frequent climbing of ramps

    and stairs, no climbing of ladders, ropes and scaffolds, no balancing, and frequent stooping, kneeling, crouching, and crawling. He is limited to frequent bilateral handling and fingering. He must avoid workplace hazards. He is able to perform simple routine tasks in a work environment with few changes and that is free of fast-paced production requirements. He is limited to occasional public contact.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on May 8, 1979, and was 36 years old, which is defined as a younger individual age 18-49, on the alleged onset date.

8. Plaintiff has a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that he is "not disabled" whether or not he has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act from January 29, 2016 through the date of the decision. Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's]

conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the medical opinion of Dr. Gomez?
2. Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?
3. Did the ALJ properly assess the lay witness statement?

The Court finds that the ALJ properly evaluated the evidence, including Dr. Gomez's opinion, Plaintiff's subjective symptom testimony, and the lay witness statement. The ALJ's decision is affirmed.

**I.    The ALJ properly evaluated Dr. Gomez's opinion.**

Page 6 of 14 – OPINION and ORDER

The ALJ is responsible for resolving conflicts in the medical record. 20 C.F.R. § 404.1527; *Batson v. Comm' r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ is not required to incorporate limitations phrased equivocally into the RFC. *See Valentine v. Comm'r*, 574 F.3d 685, 691-92 (9th Cir. 2009); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015*); see also Griffith v. Colvin,* 2014 WL 1303102, *5 n. 3 (D. Or. Mar. 20, 2014) (statements that do not "show how a claimant's symptoms translate into specific functional deficits which preclude work activity," such as suggestions about what the claimant "may," "might," or "should" do are "not ... work-related limitations of function that need to be reflected in the RFC") (citations and internal quotations and brackets omitted.).

Dr. Danielle Gomez, M.D., began treating Plaintiff in September 2017 for major depressive disorder and inattentive type ADHD. Tr. 531, 558. In February 2018, she indicated in a written opinion that Plaintiff's symptoms included decreased energy, anhedonia, hopelessness, sleep disturbance, and suicidal ideation, all of which had impacted his ability to function. Tr. 558. Dr. Gomez reported that she had yet to find a medication regimen that significantly decreased Plaintiff's symptoms, despite multiple trials. Tr. 558.

Dr. Gomez provided a second written opinion in May 2018. Tr. 555. She noted that she saw Plaintiff about every six to eight weeks for psychiatric medication management. Tr. 555.

Plaintiff's diagnoses included major depressive disorder, recurrent with anxious distress; hypothyroidism; and ADHD, inattentive type. Tr. 556. Relevant clinical findings and symptoms included decreased energy; depressed mood; loss of interest in activities; intermittent suicidal ideation; hopelessness; trouble with attention, focus, and concentration; and distractibility. Tr. 556. Dr. Gomez opined that Plaintiff should not work with the public, and that he would do best in a low-stress and slow-paced environment. Tr. 556. She believed that exacerbations of his symptoms could interfere with his ability to perform full-time work and concluded that part-time work was more reasonable. Tr. 556.

> The ALJ reasoned:
>
> > In light of the claimant's extended history of mental impairments but ability to sustain substantial gainful activity for many years prior to the alleged onset date, the comment concerning part time work is given little weight. Furthermore, the language used—that it would "likely be more reasonable"—is submissive and does not show much confidence in the need for reduced hours.

Tr. 25 (internal citations omitted). The ALJ reasonably discounted Dr. Gomez's opinion because Plaintiff had a long history of successful work despite longstanding symptoms. Tr. 23. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (explaining that the ALJ may discount an opinion about a claimant's limitations where the claimant's impairments are of longstanding duration and did not prevent the claimant from working).

The ALJ also did not adopt the precise opinion of Dr. Gomez because the opinion was tentative and lacked certainty. Tr. 25. Dr. Gomez specifically noted that she had not evaluated Plaintiff "in an occupational context." Tr. 556. Limitations posited by Dr. Gomez were speculative, such as her statement that working with the public "would not be a good choice." Her comments about stress and pacing were presented as "the best option," and her discussion of part time work characterized such a schedule as "reasonable." Such limitations are not

imperative requirements, but recommendations for maximizing success in work performance. The "residual functional capacity is the most [a claimant] can still do despite [his] limitations," not the conditions under which he would function best. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ was not required to incorporate Dr. Gomez's equivocal recommendations, nor her suggestions for maximizing Plaintiff's success, into the RFC.

Moreover, in reaching the RFC, the ALJ considered the opinion of Dr. Gomez and accommodated as much of her opinion as was consistent with the record as a whole and the need for vocationally relevant terminology. "Low-stress" and a "slow paced" environment do not involve specific and vocationally relevant terms, but the ALJ considered Dr. Gomez's recommendations regarding stress and pacing in finding limitations to routine tasks in a work environment with few changes that was free of fast-paced production requirements. Tr. 21. This was a reasonable translation of Dr. Gomez's medical opinion into a functional limitation for disability evaluation purposes.

Plaintiff argues for a different interpretation of the evidence and a different interpretation of Plaintiff's limitations. However, the court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Here, Plaintiff's interpretation of the evidence is reasonable, but so is the ALJ's interpretation. The ALJ interpreted all the evidence rationally and gave several valid reasons supporting her analysis. The ALJ cited to Plaintiff's medical history and to the evidence to articulate an RFC assessment based on substantial evidence within the record. Thus, substantial evidence supports the ALJ's assessment regarding Plaintiff limitations and her decision should be upheld.

II.     **The ALJ properly evaluated Plaintiff's subjective symptom testimony.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

In reaching the RFC, the ALJ credited some of Plaintiff's allegations but properly discounted some of his statements about the severity of his symptoms. Tr. 526-528. In particular, the ALJ noted that Plaintiff was able to understand and remember short and direct instructions,

preferred a routine, and got along with others including authority figures if one-on-one, and that Plaintiff "feels best when moving around." Tr. 21, 23, 534.

The ALJ properly discounted Plaintiff's allegations because he alleged disability based on longstanding conditions that did not prevent him from working in the past. Tr. 23. *See Bayliss,* 427 F.3d at 1216. For example, Plaintiff reported to Karsten Johnson, D.O., in July 2016 that his pain had limited him "since birth" and the shunt to treat hydrocephalus resulting in cognitive issues was placed when he was three months of age. Tr. 23, 438, 536. Yet, Plaintiff was able to work at the substantial gainful level consistently since 2000. Tr. 239. This is a specific, clear and convincing reason for the ALJ to determine that these conditions did not prevent Plaintiff from working.

Additionally, the ALJ found that Plaintiff's statements and complaints were inconsistent throughout the record and at times contradictory. Inconsistent statements about the extent of a claimant's symptoms are also a proper consideration in evaluating the claimant's testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Plaintiff's claims regarding his pain varied from being incapacitated at times, to only episodic with occasional incapacity. (Tr. 253, 430). The ALJ also found that there was "some inconsistency in statements about poor balance versus stating he 'frequently rides a skateboard.' The record does not contain evidence of problems with balance leading to injuries." Tr. 23. Similarly, the ALJ found there were "inconsistent statements on whether the claimant actually has panic attacks or just a persistent level of anxiety and only occasional suicidal ideation presented in the context of substance use."

The ALJ further found that Plaintiff's allegations were contradicted by evidence in the record, including his own statements about daily activities. An ALJ may discredit a plaintiff's

subjective complaints by identifying inconsistencies between his complaints and activities of daily living. *Burch*, 400 F.3d at 680-81*; Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). An activity does not need to rise to the level of full-time work to undermine a claimant's statements; daily activities can undermine a claimant's allegations where they "contradict [the claimant's] other testimony," even if they are not comparable to full time work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, for example, Plaintiff told one examiner that he "frequently rides a skateboard," and then later qualified his statement to "days he is not too unbalanced to do so." Tr. 432. Four months previously, Plaintiff stated he only "rarely" used a skateboard and employed a "push stick." Tr. 256. Similarly, Plaintiff indicated in his function reports that he only prepared food a few times per week, but he told an evaluator in July 2016 that he began dinner preparation every night. Tr. 432. While he also indicated that his partner finished cooking the evening meal, he reported the ability to use the stove, oven and microwave independently and was able to prepare food such as hamburgers and eggs. Tr. 254. The ALJ thus gave specific instances of inconsistent and contradictory statements from Plaintiff about the severity of his symptoms and limitations; these are clear and convincing reasons to discount such statements.

      The ALJ also noted that there was evidence of improvement with treatment. In particular, Plaintiff reported improvement in both sleep and "clear headedness" with medication adjustments. Tr. 23, 473, 546. Plaintiff also testified that his right upper extremity symptoms had abated with release surgery, characterizing use of his extremity as "up to 100% again." Tr. 47. Evidence that impairments have improved with treatment is also a valid consideration when evaluating a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv). 416.929(c)(3)(iv); *Wellington v. Berryhill*, 878 F. 3d, 867, 876 (9th Cir. 2017).

Overall, the ALJ properly evaluated Plaintiff's subjective symptom testimony and determined that the severity of his limitations and impairments were not supported by the record.

**III.     The ALJ properly evaluated the lay witness statement.**

It is well-established that an ALJ must consider testimony from lay witnesses submitted on behalf of a claimant. 20 C.F.R. §§ 416.929(c)(3), 416.945(a)(3). The Commissioner's regulations do not require any explicit discussion of lay witness testimony in the ALJ's decision. *See* SSR 06-03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"). However, within the Ninth Circuit, lay witness testimony cannot be disregarded without comment. *Molina v. Astrue*, 674 F.3d 1110, 1114 (9th Cir. 2012) (citing *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996)). "Other source" opinion evidence may be discounted by an ALJ if the ALJ "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010).   If the ALJ gives germane reasons for rejecting testimony by one witness, "the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Similarly, where the ALJ gives clear and convincing reasons for rejecting the claimant's subjective complaints, and the lay witness evidence is similar to the claimant's complaints, the ALJ may reject the lay witness evidence for the same reasons. *Valentine*, 574 F.3d at 694.

Here, the record includes a statement from Plaintiff's domestic partner, Ms. Gutierrez, that the ALJ did not fully credit, for similar reasons as the ALJ's discounting of Plaintiff's own testimony. Tr. 22, 261-268.  Plaintiff and the lay witness generally described similar limitations. Tr. 22, 39-55, 253-268. The reasons the ALJ provided for discounting his statements—the contrary nature of the allegations, longstanding impairment with employment, inconsistencies

with the objective medical evidence—applied equally to this lay witness statement. Accordingly, the ALJ provided germane reasons for rejecting Ms. Gutierrez's lay witness statements.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this case is dismissed.

It is so ORDERED and DATED this __24__ day of March, 2021.

_____
MARK D. CLARKE
United States Magistrate Judge